BART M. DAVIS, IDAHO STATE BAR NO. 2696
UNITED STATES ATTORNEY
DARCI W. CRANE, IDAHO STATE BAR NO. 8852
ASSISTANT UNITED STATES ATTORNEY
DISTRICT OF IDAHO
WASHINGTON GROUP PLAZA IV
800 EAST PARK BOULEVARD, SUITE 600
BOISE, ID 83712-7788
TELEPHONE: (208) 334-1211
FACSIMILE: (208) 334-1413

U.S. COURTS

JUN 10 2020

Rcvd_____Filed_____Time_____
STEPHEN W. KENYON
CLERK, DISTRICT OF IDAHO

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>SCOTT ALEXANDER LANEY,<br><br>Defendant. | Case No. 1:19-cr-00292-BLW<br><br>**SUPERSEDING INDICTMENT**<br><br>18 U.S.C. § 2<br>18 U.S.C. § 982(a)(7)<br>18 U.S.C. § 1028A<br>18 U.S.C. § 1347 |

The Grand Jury charges:

At all times material to this Superseding Indictment:

General Allegations

1. The Idaho Medicaid program ("Medicaid") was a state administered health insurance program funded predominately by the United States government and administered by the State of Idaho. It was a cooperative federal/state program, which was managed by the Idaho Department of Health and Welfare. Medicaid was a "healthcare benefit program" as defined by 18 U.S.C. § 24(b). Medicaid helped to pay for reasonable and medically

necessary services for individuals who were deemed eligible under state low-income programs.

2. Medicare was a federally administered health insurance program funded by the United States Department of Health and Human Services ("HHS"). The Centers for Medicare and Medicaid Services ("CMS") was an agency of HHS and was responsible for the administration of Medicare. Medicare was a "health care benefit program" as defined by 18 U.S.C. § 24(b). Medicare helped to pay for reasonable and medically necessary services for individuals who were deemed eligible under federal regulations, including, if they were 65 or older, had certain disabilities, or had end-stage renal disease.

3. Medicaid and Medicare required that laboratory tests, including urine drug screening, be ordered by the physician or non-physician practitioner who was treating the beneficiary. Tests not ordered by the physician or non-physician practitioner who was treating the beneficiary were not considered reasonable or medically necessary. *See* 42 C.F.R. §§ 410.32 and 441.17.

4. Medicare and Medicaid would only pay for treatment and services, including diagnostic and laboratory tests, which were considered medically necessary, performed within accepted medical standards, and were rendered for a legitimate medical purpose. Medicare and Medicaid prohibited payment for items and services that were not reasonable and necessary for the diagnosis and treatment of an illness or injury.

5. The National Provider Identifier ("NPI") was a unique number issued by CMS to identify a specific health care provider, including a specific nurse practitioner.

6. Nurse practitioners A.P., B.H., and D.R. were licensed medical providers in the District of Idaho with unique NPI numbers. Without their approval, A.P., B.H., and D.R.'s NPIs

were recorded on claim forms and submitted to health care benefit programs for reimbursement for urine drug screening.

7. From on or about June 10, 2013 to March 4, 2016, SCOTT ALEXANDER LANEY was employed at Millennium Health. Millennium Health was a national company that, among other things, performed laboratory testing of urine drug samples. During the relevant time period, Millennium Health submitted billings to Medicaid and Medicare for urine drug screening.

8. From at least December 2015 through April 2016, Pinnacle Laboratory Services was a national company that, among other things, performed laboratory testing of urine drug samples. During the relevant time period, Pinnacle Laboratory Services submitted billings to Medicaid and Medicare for urine drug screening.

## COUNTS ONE THROUGH NINE

### Health Care Fraud
### 18 U.S.C. §§ 1347 and 2

9. Paragraphs 1 through 8 of this Superseding Indictment are realleged and incorporated by reference as though fully set forth herein.

10. From in or about January 2014 to in or about April 2017, the defendant SCOTT ALEXANDER LANEY, did knowingly and willfully execute and attempt to execute a scheme and artifice to defraud, as to material matters, health care benefit programs, as defined in 18 U.S.C. § 24(b), and to obtain, by means of materially false and fraudulent pretenses, representations, and promises, money owned by and under the custody and control of health care benefit programs, in connection with the delivery and payment for health care benefit programs for laboratory tests, specifically urine drug screenings,

falsely and fraudulently representing that the tests were ordered by a licensed medical provider, when in truth and fact, the providers had not authorized the use of their names and NPI numbers for the tests and related billings and they were not reasonable or necessary for the diagnosis and treatment of an illness or injury.

## I. THE MANNER AND MEANS

11. In April 2015, LANEY assisted in signing up K & K Bail Bonds in Payette, Idaho, as a treatment provider named K & K Treatment ("K & K") with Millennium Health for laboratory tests, specifically urine drug screening. The NPI used for all of the testing submitted from K & K belonged to practitioner A.P. A.P. was not an employee of K & K. A.P. did not authorize the use of her name or NPI number in connection with, order items or services for, or treat any of the individuals whose urine was sent by K & K to Millennium Health for testing.

12. From on or about April 2015 through December 2015, LANEY facilitated, caused, and assisted in the submission of charges for reimbursement to Medicare and Medicaid from Millennium Health for urine drug screenings of K & K clients, using A.P.'s NPI.

13. In April 2015, LANEY signed up Dishion Enterprises in Meridian, Idaho, as a treatment provider with Millennium Health for laboratory tests, specifically urine drug screening. The NPI used for all of the testing submitted from Dishion Enterprises (Meridian) belonged to practitioner B.H. B.H. was not an employee of Dishion Enterprises. B.H. did not authorize the use of her name or NPI number in connection with, order items or services for, or treat any of the individuals whose urine was sent by Dishion Enterprises to Millennium Health for testing.

14. From on or about May 2015 through March 2016, LANEY facilitated, caused, and assisted in the submission of charges for reimbursement to Medicare and Medicaid from Millennium Health for urine drug screenings of Dishion Enterprises (Meridian) clients, using B.H.'s NPI.

15. In May 2015, LANEY assisted in signing up Dishion Enterprises in American Falls, Idaho, as a treatment provider with Millennium Health for laboratory tests, specifically urine drug screening. The NPI used for all of the testing submitted from Dishion Enterprises (American Falls) belonged to practitioner D.R. D.R. was not an employee of Dishion Enterprises. D.R. did not authorize the use of his name or NPI number in connection with, order items or services for, or treat any of the individuals whose urine was sent by Dishion Enterprises to Millennium Health for testing.

16. From August 2015 through March 2016, LANEY assisted in the submission of charges for reimbursement to Medicare and Medicaid from Millennium Health for urine drug screenings of Dishion Enterprises (American Falls) clients, using D.R.'s NPI.

17. From on or about December 2015 to January 2016, LANEY assisted in transferring K & K's laboratory tests, specifically urine drug screening, from Millennium Health to Pinnacle Laboratory Services for testing. The NPI used for all of the testing submitted from K & K belonged to practitioner A.P. A.P. was not an employee of K & K. A.P. did not authorize the use of her name or NPI number in connection with, order items or services for, or treat any of the individuals whose urine was sent by K & K to Pinnacle Laboratory Services for testing.

18. From on or about December 2015 through April 2016, LANEY facilitated, caused, and assisted in the submission of charges for reimbursement to Medicare and Medicaid from

Pinnacle Laboratory Services for urine drug screenings of K & K clients, using A.P.'s NPI.

19. From on or about May 2016 through April 2017, LANEY made payments to J.J.

## II. EXECUTION OF THE SCHEME

20. On or about the dates listed below, each date corresponding to a separate count of this Superseding Indictment, in the District of Idaho and elsewhere, the defendant SCOTT ALEXANDER LANEY, did knowingly and willfully execute and attempt to execute a scheme and artifice to defraud a health care benefit program as to material matters, and to obtain by means of materially false and fraudulent pretenses, representations, and promises, the money and property owned by, and under the custody and control of any health care benefit program in connection with the delivery of and payment for, health care benefits, items, and services, by submitting and aiding and abetting others in submitting, false and fraudulent claims to a health care benefit provider, based upon urine drug screenings that were not reasonable or medically necessary, were not authorized by a licensed medical provider, and which claims contained the names and NPI numbers of practitioners who had not authorized the use of their names or NPI numbers for the urine drug screening of these patients:

| Count | Provider Initials Used | Patient Initials | Date of Service for Urine Drug Screening (on or about) | Amount Billed | Healthcare Benefit Program Billed |
|---|---|---|---|---|---|
| 1 | A.P. | T.F. | 4/7/2015 | $1015.20 | Medicaid |
| 2 | A.P. | V.P. | 6/5/2015 | $839.04 | Medicaid |
| 3 | A.P. | D.R. | 7/24/15 | $839.04 | Medicare |
| 4 | A.P. | M.H. | 8/7/2015 | $839.04 | Medicaid |

| 5 | A.P. | C.F. | 9/2/2015 | $839.04 | Medicaid |
| 6 | A.P. | H.S. | 10/5/2015 | $900.49 | Medicaid |
| 7 | B.H. | K.M. | 5/7/2015 | $906.35 | Medicare |
| 8 | B.H. | S.L. | 6/3/2015 | $906.35 | Medicaid |
| 9 | A.P. | A.A. | 3/22/2016 | $1,649.88 | Medicare |

All in violation of Title 18, United States Code, Sections 1347 and 2.

## COUNTS TEN THROUGH EIGHTEEN

### Aggravated Identity Theft
### 18 U.S.C. §§ 1028A and 2

21. Paragraphs 1 through 20 of this Superseding Indictment are realleged and incorporated by reference as though fully set forth herein.

22. On or about the dates listed below, each date corresponding to a separate count of this Superseding Indictment, in the District of Idaho and elsewhere, the defendant SCOTT ALEXANDER LANEY, did knowingly cause others to transfer, possess, or use, without lawful authority, a means of identification of another person:

| Count | Underlying Count | Patient Initials | Date of Service for Urine Drug Screening (on or about) | Means of ID Used without Lawful Authority |
|---|---|---|---|---|
| 10 | 1 | T.F. | 4/7/2015 | A.P. name and NPI number |
| 11 | 2 | V.P. | 6/5/2015 | A.P. name and NPI number |
| 12 | 3 | D.R. | 7/24/15 | A.P. name and NPI number |
| 13 | 4 | M.H. | 8/7/2015 | A.P. name and NPI number |
| 14 | 5 | C.F. | 9/2/2015 | A.P. name and NPI number |

| 15 | 6 | H.S. | 10/5/2015 | A.P. name and NPI number |
| 16 | 7 | K.M. | 5/7/2015 | B.H. name and NPI number |
| 17 | 8 | S.L. | 6/3/2015 | B.H. name and NPI number |
| 18 | 9 | A.A. | 3/22/2016 | A.P. name and NPI number |

All in violation of Title 18, United States Code, Sections 1028A and 2.

## CRIMINAL FORFEITURE ALLEGATION
### Health Care Fraud Forfeiture
### 18 U.S.C. § 982(a)(7)

Upon conviction of the offense alleged in Counts One through Nine of this Superseding Indictment, the defendant, SCOTT ALEXANDER LANEY, shall forfeit to the United States, any property, real or personal, that constitutes or is derived, directly or indirectly, from gross proceeds traceable to the commission of the offenses. The property to be forfeited includes, but is not limited to, the following:

1. <u>Unrecovered Cash Proceeds and/or Facilitating Property</u>. The defendant obtained and controlled unrecovered proceeds of the offense of conviction, or property derived from or traceable to such proceeds, but based upon actions of the defendant, the property was transferred, diminished, comingled, or is otherwise unavailable.

2. <u>Substitute Assets.</u> Pursuant to 21 U.S.C. § 853(p) and other applicable statutes, the government will seek forfeiture of substitute assets, "or any other property of the defendant" up to the value of the defendant's assets subject to forfeiture. The government will do so when the property subject to forfeiture cannot be forfeited for one or more of the following reasons:

    a.    Cannot be located upon the exercise of due diligence;

b. Has been transferred or sold to, or deposited with, a third person;

c. Has been placed beyond the jurisdiction of the court;

d. Has been substantially diminished in value; or

e. Has been commingled with other property which cannot be subdivided without difficulty.

Dated this 10th day of June, 2020.

A TRUE BILL

*/s/ [signature on reverse]*

FOREPERSON

BART M. DAVIS
UNITED STATES ATTORNEY
By:

DARCI W. CRANE
ASSISTANT UNITED STATES ATTORNEY

SUPERSEDING INDICTMENT - 9