BART M. DAVIS, IDAHO STATE BAR NO. 2696
UNITED STATES ATTORNEY
DARCI W. CRANE, IDAHO STATE BAR NO. 8852
ASSISTANT UNITED STATES ATTORNEY
KEVIN T. MALONEY, IDAHO STATE BAR NO. 5095
ASSISTANT UNITED STATES ATTORNEY
DISTRICT OF IDAHO
1290 W. MYRTLE ST. SUITE 500
BOISE, ID 83702-7788
TELEPHONE: (208) 334-1211
FACSIMILE: (208) 334-1413

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>SCOTT ALEXANDER LANEY,<br><br>Defendant. | Case No. 19-cr-00292-BLW<br><br>**GOVERNMENT'S TRIAL BRIEF** |

The United States of America, by and through Bart M. Davis, United States Attorney, and Assistant United States Attorneys Darci W. Crane and Kevin T. Maloney, hereby file the Government's Trial Brief.

## I.    Factual Background

From 2014 through 2017, the defendant orchestrated a scheme to bill health insurance for non-medical, probation and pre-trial release-monitoring urine drug tests. He did so by causing the billings to be submitted by his employer, Millennium Health, and later a third-party lab, Pinnacle Laboratory Services, under the name and NPI (National Provider Identifier) number of

medical professionals who did not order the tests, did not see the patients, and did not use the test results in any patient treatment. As a result of the scheme, the defendant received commission payments.

From 2014 until March 2016, the defendant was employed by Millennium Health. While working there, he set up an account called "K&K Treatment" in Payette, Idaho with the assistance of his coworker Joseph Johnson.[1] That business does not exist. The actual business was Rostad GPS and Monitoring. The business performed color call urine drug screenings for defendants on pre-trial release pending resolution of their criminal cases. The business owner Kim Rostad also ran a bail bonds business from the same office called K and K Bail Bonds.

The K&K Treatment name was created by the defendant and Joseph Johnson. To establish a new account for Millennium, the defendant submitted a form called a new client registration. The form, copied below, included the name and type of the business as well as the name of the medical provider who was purportedly associated with the account. In addition to creating a new name, the new client registration the defendant submitted claimed that K&K Treatment performed outpatient substance abuse treatment. That was incorrect.

The authorized health care provider listed on the new client registration was Alisha Phillips, a nurse practitioner in Payette, Idaho. The form listed her actual NPI number. The problem was that Ms. Phillips never agreed to be the authorized health care provider for "K&K Treatment." She also never agreed to be the authorized health care provider for Rostad GPS & Monitoring or K and K Bails Bonds. Ms. Phillips did not authorize the use of her name and NPI in connection with the pre-trial urine drug screening at Rostad GPS & Monitoring. Without Ms. Phillips'

---

[1] Joseph Johnson was charged with and pleaded guilty to health care fraud in connection with his conduct in this scheme in case number 19-cr-00155-BLW.

authorization or knowledge, the defendant submitted the form and established K&K Treatment as an account with Millennium Health.  As a result of the defendant's actions, hundreds of billings were submitted by Millennium to health care benefit programs, primarily Idaho Medicaid and Medicare using Phillips' name and NPI number without her authority.  The claims were processed and Millennium received payment.  The defendant received commissions.  Ms. Phillips never received any of the lab reports, and she had no involvement.  No medical provider had any involvement.  Thus, the tests were not only lacking in medical necessity, they were not medical at all.

 **MILLENNIUM HEALTH.**

Millennium Health, LLC
16981 Via Tazon, San Diego, CA 92127
Phone: 877.451.3534  Fax: 858.451.3636
UDT Laboratory
CLIA ID# 05D10 78705
PGT Laboratory
CLIA ID# 05D20 40845: License # 00341847

## NEW CLIENT REGISTRATION
PHONE: 877.451.3534
FAX FORM TO: 858.227.9766

☑ UDT
☑ OFT
☐ PGT

## WELCOME TO MILLENNIUM HEALTH.
We value your company. Please complete this form and fax to 858.227.9766.

Date of Registration: 4 / 2 / 15   Sales Rep: Scott Laney   CSS: Joe Johnson

### PRACTICE INFORMATION

Practice Name: K & K Treatment

Address: 808 3rd Ave N

City: Payette   State: ID   Zip Code: 83661

Phone Number: 208 - 642 - 3200   Fax Number: 208 - 642 - 8141

Specialty: Primary Substance abuse - O.P.  Secondary

CLIA Number: n/a

| | |
|---|---|
| Primary Contact: (First & Last) Kim Rosrad | Title: owner. |
| Email: k and k bonds @ | Online User: ☑ |
| Secondary Contact: (First & Last) Randy Mitchell | Title: manager |
| Email: randym 48 @ live .com | Online User: ☑ |
| Additional Contact: (First & Last) | Title: |
| Email: | Online User: ☐ |
| Additional Contact: (First & Last) | Title: |
| Email: | Online User: ☐ |

### AUTHORIZED HEALTH CARE PROVIDER INFORMATION

| Provider Name: Lisa Phillips (Alisha L. Phillips) | NPI Number: 1205972544 | ☐ MD ☐ DO ☐ OTHER ☐ PA ☑ NP |
|---|---|---|
| Provider Name: | NPI Number: | ☐ MD ☐ DO ☐ OTHER ☐ PA ☐ NP |
| Provider Name: | NPI Number: | ☐ MD ☐ DO ☐ OTHER ☐ PA ☐ NP |
| Provider Name: | NPI Number: | ☐ MD ☐ DO ☐ OTHER ☐ PA ☐ NP |

### RESULTS REPORT DELIVERY

☐ FAX
Fax Number:

☑ EMAIL
Email: k and k bonds @ gmail .com

### HEALTH CARE PROVIDER ACKNOWLEDGEMENT

I hereby acknowledge that Millennium Health (MH) will perform testing for my practice as directed by individual Test Requisition forms, which may incorporate a Custom Profile (CP) if selected. I acknowledge that utilization of a CP is not required and that the authorized practitioners in my practice are responsible for selecting the individual test to be performed on each patient. I agree to only order the required individual tests that are medically necessary for the diagnosis and treatment of my patients. I further acknowledge that neither I nor my immediate family members have any financial relationship with MH not expressly permitted by the "Stark" physician self-referral law and regulations, nor have I been offered or provided anything of value in exchange for referral of testing to MH.

Authorized Health Care Provider Signature: _Phillips, NP-C_   Date: 4/2/15

### FOR OFFICE USE ONLY

MLIS ID: 233931  Address correction- see email   Date: 4/2/15

Comments: See reporting email for primary contact email   Initials: VAM

_Fax correction/email criteria_

_Please give online access :_

_* They would also like reports mailed n their office_

The Millennium Health logo... Millennium Health, LLC and its subsidiaries in the United States and other countries.
MLI-MKT29805    © 2014 Millennium Health, LLC. 08/2014

Proprietary and Confidential
Millennium Health Information
Exempt From Release Under FOIA: Subject To 18 U.S.C. §1905

GOVERNMENT
**TRIAL EXHIBIT**
CR-15-252
**1001**

MHLS0002395

GOVERNMENT'S TRIAL BRIEF - 4

Ms. Phillips was not the only provider the defendant did this to—nurse practitioners Brenda Hoyt and Darrin Robertson's names and actual NPI numbers were also used without their authority. There, the defendant set up an account with Dishion Enterprises in Meridian, Idaho. Dishion Enterprises was a business that contracted with different counties to provide misdemeanor probation. As part of their probation, some defendants had to submit urine samples for screening. In April 2015, the defendant added Dishion Enterprises as a new account at Millennium for urine drug testing. He submitted another new client registration to Millennium, claiming Dishion Enterprises' specialty was "out-pt treatment." That was incorrect. The form submitted by the defendant also listed nurse practitioner Brenda Hoyt along with her NPI number, as the authorized health care provider. Ms. Hoyt never agreed to be the authorized health care provider for Dishion Enterprises. Prior to being interviewed by law enforcement, Ms. Hoyt had never heard of Dishion Enterprises and Wade Dishion, the owner, had never heard of her.

This was repeated once more by the defendant and Joseph Johnson. Dishion Enterprises signed up its office in American Falls, Idaho, with Millennium for urine drug testing. Mr. Johnson submitted a new client registration and used nurse practitioner Darrin Robertson's name and NPI number as the authorized health care provider. Mr. Robertson never agreed to be the authorized health care provider for Dishion Enterprises. Prior to being interviewed by law enforcement, Mr. Robertson had never heard of Dishion Enterprises and, similarly, Wade Dishion had never heard of Mr. Robertson.

As a result of the fraudulent accounts the defendant set up and assisted in setting up for Dishion Enterprises, billings using Ms. Hoyt and Mr. Robertson's names and NPI numbers were submitted to health care benefit programs, primarily Idaho Medicaid and Medicare. The claims

were processed and Millennium received payment. The defendant received commissions. Neither Ms. Hoyt nor Mr. Robertson received copies of any of the lab reports, nor did they ever see any of the probationers. No medical provider had any involvement. Thus, the tests were not only lacking in medical necessity, they were not medical at all.

Prior to losing his job at Millennium in March 2016, the defendant and Mr. Johnson transferred the K&K Treatment account to another lab—Pinnacle Laboratory Services. This change was not initiated by "K&K Treatment." It was initiated by the defendant and Mr. Johnson. The defendant and Mr. Johnson worked with a company called Baker Orlandi Ventures dba Partner First. Partner First, in turn, contracted with Pinnacle to test urine drug samples. The defendant and Mr. Johnson transferred the "K&K Treatment" account via their association with Partner First. As a result, Rostad GPS & Monitoring began receiving lab reports from Pinnacle. The defendant and Mr. Johnson received payments from Baker Orlandi,

**Joseph Johnson aka Benji Medical**

| | | |
|---|---|---|
| 03/10/16 | BAKER ORLANDI VE BUS DISB 160310 1444764 JOSEPH JOHNSON | $2,000.00 |
| 04/15/16 | BAKER ORLANDI VE BUS DISB 160415 1507514 JOSEPH JOHNSON | $3,740.00 |
| 05/23/16 | BAKER ORLANDI VE BUS DISB 160523 1574024 JOSEPH JOHNSON | $907.50 |

**Scott Laney aka Aphelion Solutions**

| | | | | |
|---|---|---|---|---|
| 03/10 | 03/10 | ACH Deposit BAKER ORLANDI VE - BUS DISB 1444763 | | 2,000.00 |
| 04/15 | 04/15 | ACH Deposit BAKER ORLANDI VE - BUS DISB 1507511 | | 3,740.00 |
| 05/23 | 05/23 | ACH Deposit BAKER ORLANDI VE - BUS DISB 1574021 | | 907.50 |



GOVERNMENT TRIAL EXHIBIT 1032

copied above, as a result of transferring accounts they previously set up at Millennium, including K&K Treatment.

In April 2016, a defendant on pre-trial release in Payette County was erroneously arrested for a false positive urine drug test. The defendant was on color call and submitted his urine samples through Rostad GPS & Monitoring which, in turn, sent them to Pinnacle for testing. The attorney for that defendant contacted Ms. Phillips because her name was listed as the authorized provider. That is how Ms. Phillips discovered her name and NPI number were being used in connection with pre-trial urine drug testing at Rostad GPS and Monitoring. Once again, Ms. Phillips never received any of the lab reports, and she had no involvement. No medical provider had any involvement. Thus, the tests were not only lacking in medical necessity, they were not medical at all. Shortly thereafter, the unauthorized testing using Ms. Phillips, Ms. Hoyt, and Mr. Robertson's identities ended.

The end of the testing scheme, however, began the defendant's monthly payments to Joseph Johnson. Monthly payments described as "hush money" that continued until the defendant and Mr. Johnson received target letters and subpoenas from the government. The payments began in May 2016 and ended in April 2017 and totaled approximately $15,183.00.

## II.  Procedural Background

### a.  Bench Trial

The case is set for a bench trial on September 21, 2020. On January 24, 2020, the parties filed a joint waiver wherein the defendant waived his right to trial by jury pursuant the Federal Rule of Criminal Procedure 23. (ECF No. 35.) For a defendant's waiver of the Sixth Amendment right to a jury trial to be valid, it must be voluntary, knowing, and intelligent. *United States v. Laney*, 881 F.3d 1100, 1106 (9th Cir. 2018). "In most cases, adherence to the

dictates of Federal Rule of Criminal Procedure 23(a) creates the presumption that the waiver was voluntary, knowing, and intelligent." *Id.* (internal citations and quotations removed). Rule 23(a) provides that "[i]f the defendant, is entitled to a jury trial, the trial must be by jury unless: (1) the defendant waives a jury trial in writing; (2) the government consents; and (3) the court approves." Fed. R. Crim. P. 23(a). The Ninth Circuit held that, in order to raise a presumption of validity, the waiver contemplated in Rule 23(a) requires the defendant's signature. *Laney*, 881 F.3d at 1107. In addition, the court in *Laney* further noted that it had "implored district courts to conduct colloquies with the defendant before accepting a waiver of his or her right to a jury trial, the failure to do so [however] does not violate either the Constitution nor does it *ipso facto* require reversal." *Id.* at 1106 (internal citations and quotations omitted).

In this case, the Defendant's Waiver of Jury Trial Pursuant to Fed. Crim. Rule 23 is signed by the defendant, defense counsel, and the government. (ECF No. 35). The Court has set this case for a bench trial, indicating a preliminary approval. The waiver in this case satisfies the requirements of Rule 23(a) and *Laney*. To satisfy the dicta in *Laney*, the government respectfully requests that the Court make an in-court inquiry of the defendant's waiver of his right to a jury trial prior to commencing the trial. *See Laney*, 881 F.3d at 1106.

      b. <u>Relevant Filings</u>

On June 10, 2020, the grand jury returned a Superseding Indictment. (ECF No. 47.) The government has filed a number of notices and summary exhibits, beginning in March 2020. The defendant has filed no notices and no objections to the government's intended evidence. Revised Criminal Procedure Order, General Order No. 352, p. 6-8.

In particular, the government filed the following notices and motions. Legal authority is contained within each notice and will not be fully repeated here.

| ECF No. and Filing Date | Title and Summary of Filing |
|---|---|
| **ECF No. 43**<br><br>**3/26/2020** | **Notice of Intent to Introduce Expert Testimony**—Tammy Ewers, Medicare expert witness and William Deseron, Idaho Medicaid expert witness. |
| **ECF No. 44**<br><br>**3/27/2020** | **Notice of Intent to Introduce Evidence**—Notice of admissible evidence pursuant to Federal Rules of Evidence 401, 402, and 404(b).  This Notice affirmatively states that the evidence is directly relevant and Rule 404(b) is a secondary theory of admissibility.  A summary of the evidence included in the notice, includes additional claims submitted as part of the scheme, evidence of the defendant's actions related to Pinnacle Laboratory Services and a false positive test, and the defendant's payments and gifts to his co-worker involved in the scheme and clients.<br><br>The Superseding Indictment (ECF No. 47), filed after this notice, added charges related to the defendant's involvement in the Pinnacle Laboratory Services conduct as well as a manner and means allegation involving the payments the defendant made to his co-worker. |
| **ECF No. 50**<br><br>**7/22/2020** | **Supplemental Notice of Intent to Introduce Expert Testimony**—Teresa Cirelli will testify as the government's Medicare expert witness instead of Tammy Ewers due to scheduling conflicts with the change in the trial date. |

| ECF No. 51<br>8/18/2020 | **Notice of Witness with Specialized Knowledge Pursuant to FRE 701, 702, and 703**—Kristen Baker, National Sales Director for Millennium Health, will testify about a training she presented that the defendant attended as well as additional information about the training sales representatives received, the resources available to sales representatives, the process of setting up new accounts, how urine drug screens were ordered and processed, how sales representatives were reimbursed for expenses, and how employee terminations were handled by Millennium Health. |
|---|---|
| ECF No. 52<br>8/19/2020 | **Notice Pursuant to Federal Rule of Evidence 902(11)**—The notice included a table identifying certified records by discovery bates number. |
| ECF No. 54<br>8/24/2020 | **Motion *in Limine* to Limit Evidence and Argument Regarding Millennium Health's Settlement and Corporate Integrity Agreemen**t—Pursuant to Rule 403, the motion asks the Court to limit the introduction of evidence regarding Millennium Health's settlement agreements and corporate integrity agreement with the United States regarding custom profiles.<br>The defendant filed a response to this motion on September 14, 2020 (ECF No. 61). |
| ECF No. 56<br>9/6/2020 | **Notice Pursuant to Federal Rule of Evidence 902(11)**—Supplemental notice for an additional certification for bank records. |

| ECF No. 57 | Notice of Intent to Introduce Summary Evidence Pursuant to |
|---|---|
| 9/8/2020 | **Fed. R. Evid. 1006**—The government disclosed multiple summary exhibits it intends to introduce at trial, most of which are derived from 902(11) certified business records. |

## III. Pertinent Law

### c. Health Care Fraud

Counts one through nine of the Superseding Indictment charge the defendant with health care fraud, in violation of Title 18 United States Code, Sections 1347 and 2. The elements of health care fraud are as follows:

1. The defendant knowingly and willfully executed and attempted to execute a scheme or plan to defraud a health care benefit program to obtain money by and under the custody or control of a health care benefit program by means of material false or fraudulent pretenses, representations, or promises;

2. The defendant acted with the intent to defraud;

3. Medicare and/or Idaho Medicaid was a health care benefit program; and

4. The scheme or plan was executed in connection with the delivery or payment for health care benefits, items or services

Ninth Circuit Model Criminal Jury Instructions § 8.128A (approved 12/2019).

An act is done knowingly if the defendant is aware of the act and does not act or fails to act through ignorance, mistake, or accident. You may consider evidence of the defendant's words, acts, or omissions, along with all the other evidence, in deciding whether the defendant acted knowingly. Ninth Circuit Model Criminal Jury Instructions § 5.7 (approved 3/2018).

The government must prove that the defendant acted willfully in committing health care fraud, which requires that the defendant acted with knowledge that the conduct was unlawful.

*Bryan v. United States*, 524 U.S. 184, 191-192 (1998); *United States v. Awad*, 551 F.3d 930, 939-940 (9th Cir. 2009) (discussing willfulness in the context of 18 U.S.C. § 1347). However, the government need not prove that the defendant was aware of the specific provision of law that the defendant is charged with or violating any other specific provision. 18 U.S.C. § 1347(b). "[D]irect proof of one's specific wrongful intent is rarely available." *Dearing*, 504 F.3d at 901 *United States v. Dearing*, 504 F.3d 897, 902 (9th Cir. 2007); (internal citations and quotations omitted). "[W]illfulness may be inferred from circumstantial evidence of fraudulent intent. *Id.*

An intent to defraud is an intent to deceive and cheat. *United States v. Miller*, 953 F.3d 1095, 1103 (9th Cir. 2020). The required showing regarding a defendant's intent may be satisfied by circumstantial evidence that he acted with reckless indifference to the truth or falsity of his statements. *Id.*; *United States v. Dearing*, 504 F.3d 897, 902 (9th Cir. 2007). In health care fraud cases, "intent can be inferred from effort to conceal the unlawful activity, from misrepresentations, from proof of knowledge, and from profits." *Id.* at 901 (*quoting United States v. Davis*, 490 F.3d 541, 549 (6th Cir. 2007)) (internal citations omitted).

"Health care benefit program" means any public or private plan or contract, affecting commerce, under which any medical benefit, item, or service is provided to any individual, and includes any individual or entity who is providing a medical benefit, item, or service for which payment may be made under the plan or contract. 18 U.S.C. § 24(b); Ninth Circuit Model Criminal Jury Instructions § 8.128A, cmt. (approved 12/2019).

      d.  <u>Aggravated Identity Theft</u>

Counts ten through eighteen of the Superseding Indictment charge the defendant with aggravated identity theft, in violation of Title 18 United States Code, Sections 1028 and 2. A

conviction under this statute would mandate a two-year prison term, consecutive to the

underlying health care fraud. The elements of aggravated identity theft are as follows:

1. The defendant knowingly transferred, possessed, or used, without legal a means of identification of another person;

2. The defendant knew that the means of identification belonged to a real person; and

3. The defendant did so during and in relation to health care fraud, in violation of 18 U.S.C. §§ 1347 and 2.

Ninth Circuit Model Criminal Jury Instructions § 8.83 (approved 12/2019).

The government need not prove that the identification document was stolen. *United States v. Osuna-Alvarez*, 788 F.3d 1183, 1885 (9th Cir. 2015).

e. <u>Aiding and Abetting</u>

All eighteen counts of the Superseding Indictment include specific reference to Title 18

United States Code, Section 2. The requirements of aiding and abetting related to § 2(a) are as

follows:

1. Someone else committed (health care fraud and/or aggravated identity theft);

2. The defendant aided, counseled, commanded, induced, or procured that person with respect to at least one element of (health care fraud and/or aggravated identity theft);

3. The defendant acted with the intent to facilitate (health care fraud and/or aggravated identity theft); and

4. The defendant acted before the crime was completed.

Ninth Circuit Model Criminal Jury Instructions § 5.1 (approved 9/2019).

No specific unanimity instruction on the issue of who acted as a principal or aider and

abettor is necessary, nor does the jury need to reach unanimous agreement on the manner (e.g.,

"procured," "aided," "abetted," "counseled," "induced," or "commanded") by which the

defendant provided assistance. *United States v. Kim*, 196 F.3d 1079, 1083 (9th Cir. 1999);

*United States v. Vandeering*, 50 F.3d 696, 702 (9th Cir. 1995).

The requirements of aiding and abetting related to § 2(b) are as follows:

A defendant may be found guilty of the crimes charged even if the defendant did not personally commit the acts constituting the crime if the defendant willfully caused an act to be done that if directly performed by him would be an offense against the United States. A defendant who put in motion or causes the commission of an indispensable element of the offense may be found guilty as if he had committed this element himself.

Ninth Circuit Model Criminal Jury Instructions § 5.1A (approved 9/2019).

## IV. Evidentiary Issues

### a. Authenticity of Business Records and Public Records

The government obtained various business records from Millennium Health, banks, Medicare, and Idaho Medicaid. Associated with these records, the government has provided in discovery to the defendant Rule 902(11) certifications from the respective custodians of record that the records provided are authentic records of regularly conducted activity. The government intends to introduce these records without a witness custodian, and pursuant to Federal Rules of Evidence 803(6) and 902(11), as set forth in the Notices filed on August 19, 2020 and September 6, 2020.

Under Rule 803(6), the government must produce a qualified witness to testify that the documents were made and kept in the regular course of business. "A witness does not have to be the custodian of documents offered into evidence to establish Rule 803(6)'s foundational requirements." *United States v. Childs*, 5 F.3d 1328, 1334 (9th Cir. 1993). "The phrase 'other qualified witness' is broadly interpreted to require only that the witness understand the record-keeping system." *Id.* (*quoting United States v. Ray*, 930 F.2d 1368, 1370 (9th Cir. 1990) (potentially overturned on other grounds)).

To date, the defendant has not filed any pretrial motions challenging the authenticity of these records. The deadline to object to the first notice has passed. Pursuant to this Court's Revised Criminal Procedural Order, the defendant has fourteen days to object and after that has waived aby such objection. *See* Rev. Crim. Pro. Ord. at 10. ("After receiving notice under Fed. R. Evid. 902(11) and (12), a party has fourteen (14) days to make a specific objection to the authenticity of any record. . . . Otherwise, the Court will deem the requirement of authenticity at trial waived, unless failure to comply is excused by the Court.")

   b. Defendant's Statements and Judicial Notice

  In 2016, the defendant went to the office of an attorney representing defendant, Tyrell Erlebach, who was arrested on a false positive urine drug test that was the catalyst of this investigation. The defendant discussed and attempted to explain the circumstances to Erlebach's attorney. The attorney recorded the defendant. In addition, the defendant had various conversations with co-workers and customers. In 2018 and 2019, the defendant filed declarations in a civil lawsuit related to the subject matter of this case. *Tyrell Curtis Erlebach v. Raj Enterprises of Central Florida, et al*, Case No. 18-cv-00173-BLW. In 2015, the defendant filed and subsequently dismissed a *qui tam* complaint against Millennium Health. Case No. 15-cv-01367-RBD-DAB. The government intends to introduce these statements at trial pursuant to Federal Rules of Evidence 201(b) and 801(d)(2).

  Rule 201(b) allows a court to take judicial notice of a "fact that is not subject to reasonable dispute because it. . . can be accurately and readily determined from sources whose accuracy cannot reasonably questioned." Fed. R. Evid. 201(b). "In particular, a court may take judicial notice of its own records in other cases, as well as the records of an inferior court in other cases." *United States v. Wilson*, 631 F.2d 118, 119 (9th Cir. 1980); see also *United States*

*v. Graham*, 198 F.3d 255 (9th Cir. 1999) (unpublished) (upholding district court's judicial notice of defendant's signature on document in district court file in bench trial).

It is well-settled that a statement by a party may be offered against him as an admission and is therefore nonhearsay. *United States v. Nixon*, 418 U.S. 683, 702, n.13 (1974); *United States v. Warren*, 25 F.3d 890, 895 (9th Cir. 1994) ("A defendant's 'own out-of-court admissions. . . surmount all objections based on the hearsay rule. . . and [are] admissible for whatever inferences the trial judge [can] reasonably draw.'"). It is also established that writings, such as correspondence, by a defendant may constitute admissions. *United States v. Moran*, 759 F.2d 777, 786 (9th Cir. 1985). Although the government may offer a statement into evidence against a defendant as an admission, the defendant cannot offer his prior statements on his own behalf for proof of the truth of the matter asserted therein. Such self-serving out-of-court statements constitute hearsay. *See United States v. Ortega*, 203 F.3d 675, 682 (9th Cir. 2000) (Defendant could not introduce non-self-inculpatory statements because they were inadmissible hearsay.) (*holding modified on other grounds by United States v. Larson*, 495 F.3d 1094). Nor can the defendant seek to introduce such hearsay statements through cross-examination of other witnesses. *Id.; United States v. Fernandez*, 839 F.2d 639, 640 (9th Cir. 1988).

    c.    Materiality Testimony

Health care fraud requires proof of materiality as an element of the crime. *See* Ninth Circuit Model Criminal Jury Instructions § 8.128A (approved 12/2019). To prove materiality for the health care fraud counts, the government plans to ask the Medicare and Medicaid expert witnesses whether the claims charged in counts one through nine would have been paid "had they known" certain facts. Those facts include that the ordering providers did not order the urine drug screening that was billed, that the ordering providers never saw the beneficiaries, that the

providers would never receive and/or review the test results, and that there was no medical necessity.

        d.   Admission of Co-Conspirator's Out-of-Court Statements

The defendant and Joseph Johnson were both involved in the health care fraud scheme alleged in the Superseding Indictment. Johnson pleaded guilty to one count of health care fraud for his involvement and is awaiting sentencing. *See United States v. Joseph Johnson*, Case No. 19-cr-00155-BLW, Dkt. 1-3, 7, and 38. The government anticipates that Johnson will testify at trial. In addition, the government intends to offer witness testimony about statements Johnson made during the course of the scheme as statements of a co-conspirator in furtherance of a conspiracy. These statements are admissible pursuant to Federal Rule of Evidence 801(d)(2)(E).

A statement that is otherwise considered hearsay is admissible if it "was made by the party's coconspirator during and in furtherance of the conspiracy." Fed. R. Evid. 801(d)(2)(E). Statements are made in furtherance of a conspiracy when the statements "further the common objectives of the conspiracy or set in motion transactions that are an integral part of the conspiracy. Statements made to induce enlistment or further participation in the group's activities are considered to be in furtherance of the conspiracy." *United States v. Kearns*, 61 F.3d 1422, 1426 (9th Cir. 1995) (citations and internal quotations omitted). The indictment does not have to contain a conspiracy count to allow admission of a coconspirator's statement. *United States v. Manning*, 56 F.3d 1188, 1197 (9th Cir. 1995). "The question is merely whether there was proof of sufficient concert of action to show the individuals to have been engaged in a joint venture." *Id.*

"While the declarant must be a member of the conspiracy, the witness testifying at trial need not be a member of the conspiracy in order for a coconspirator's statement to be

admissible." *United States v. Wilson*, 148 F. App'x 602, 604 (9th Cir. 2005) (*citing United States v. Williams*, 989 F.2d, 1061, 1067-1069 (9th Cir.1993) (holding that statements of coconspirators to non-members of the conspiracy, introduced through the testimony of non-members were admissible under Rule 801(d)(2)(E))). If a party objects to the admission of coconspirator statements because it asserts the statements do not qualify under Rule 801(d)(2)(E), "the offering party must prove them by a preponderance of the evidence." *Bourjaily v. United States*, 483 U.S. 171, 176 (1987). "[A] court, in making a preliminary factual determination under Rule 801(d)(2)(E), may examine the hearsay statements sought to be admitted." *Id.* at 181; *see Williams*, 989 F.2d at 1067.

       e.   Defendant's Financial Gain and Payments to Co-defendant

As set forth above, the government intends to introduce evidence about commissions the defendant received in connection with urine drug tests as well as the defendant's payments to his co-defendant. In health care fraud cases, "intent can be inferred from effort to conceal the unlawful activity, from misrepresentations, from proof of knowledge, and from profits." *Id.* (*quoting United States v. Davis*, 490 F.3d 541, 549 (6th Cir. 2007)) (internal citations omitted).

       f.   Forfeiture money judgment

The Superseding Indictment does not list any specific property for forfeiture, but rather seeks only a forfeiture money judgment for unrecovered fraud scheme proceeds. (ECF No. 47 at 8.) The Court should determine the money judgment amount as part of sentencing. *See* Fed. R. Crim. P. 32.2 (If the government seeks a personal money judgment, the court must determine the amount of money that the defendant will be ordered to pay); *United States v. Phillips*, 704 F.3d 754, 771 (9th Cir. 2012) (The forfeiture jury verdict does not apply to monetary forfeiture judgments, which the court must determine).

## V. Discovery

The government has disclosed extensive discovery, beyond the requirements of Rule 16 or this Court's Criminal Procedural Order. The government disclosed the bulk of its discovery in three disclosures on October 8, 9, and 17, 2019 - approximately 17,000 Bates-numbered pages - including most of the *Jencks* material of its substantive witnesses. In January 2020, the government made five additional discovery disclosures. The January 28, 2020 production alerted defense counsel that there was an error in the original Bates-numbering system and re-disclosed approximately 8,000 pages of discovery with a chart showing the conversion between the two sets of Bates-numbering. Also included in the January 28, 2020 disclosure was the plea agreement for a cooperating witness who will testify at trial.[2] The government produced additional discovery on April 3, 2020, June 5, 2020, August 18, 2020, August 28, 2020, September 8, 2020, and September 10, 2020. As of the filing of this brief, the government has produced over 21, 000 Bates-numbered pages in discovery.

Additionally, on January 2, 2020, June 5, 2020, and August 18, 2020, the government disclosed the existence of physical files and additional documents and offered to set up a time for the defense to review them. On September 6, 2020, the defense contacted the government to set up a time to view that evidence. The government responded the same day and, after exchanging a number of emails, the defense has an appointment to view the evidence on September 14, 2020.

The defendant made a specific request for "exculpatory evidence" by email on September 8, 2020, concerning Remittance Advice Reports (essentially, reports of payments for services),

---

[2] On January 9, 2020, the Court granted the government's Motion for Limited Unsealing of Documents Filed Under Seal (ECF No. 31). (ECF No. 32.)

which the defense believed were sent to the nurse practitioners discussed above. Special Agent Kreitzer asked Idaho Medicaid and Medicare witnesses about this topic. They reported that the reports at issue went to the paying entity (*e.g.* Millennium Labs, Pinnacle Laboratory Services), not the purported ordering provider (the nurse practitioners). S.A. Krietzer's report documenting this was sent to the defense by email on September 10, 2020.

At arraignment, and pursuant to the Procedural Order, the government made a request for reciprocal discovery. The defendant has provided the government with some discovery. The government will seek to exclude any and all undisclosed documents or materials the defendant attempts to use at trial, other than those used only to impeach government witnesses.

## VI.    Conclusion

As of the date of the filing of this Trial Brief, the government expects to call approximately 14 witnesses, and introduce approximately 100 exhibits, in its case-in-chief. The witnesses will include the nurse practitioners whose identities were misused, the business owners of the pre-trial services and probation monitoring businesses, the defendant's coconspirator, employees from Millennium Health, expert witnesses from Idaho Medicaid and Medicare, and a custodian of records. Depending on the amount of cross-examination, and pace of trial, the government intends to complete its case-in-chief by September 23, 2020.

Respectfully submitted this 14th day of September, 2020.

BART M. DAVIS
UNITED STATES ATTORNEY
By:


*/s/ Darci W. Crane*
DARCI W. CRANE
Assistant United States Attorney
KEVIN T. MALONEY
Assistant United States Attorney


CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on September 14, 2020, the foregoing **GOVERNMENT'S**

**TRIAL BRIEF** was electronically filed with the Clerk of the Court using the CM/ECF system,

and that a copy was served on the following parties or counsel by:

| DENNIS CHARNEY<br>PO Box 171<br>Ten Sleep, Wyoming 82442<br>dennischarney@gmail.com | United States Mail, postage prepaid<br><br>fax<br>x ECF filing<br>email |
|---|---|


*/s/ Darci W. Crane*