UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>SCOTT ALEXANDER LANEY,<br><br>Defendant. | Case No. 1:19- cr-00292-BLW<br><br>**MEMORANDUM DECISION AND ORDER** |

# INTRODUCTION

Before the Court are Scott Laney's motions for a new trial. Dkt. 87, 101. Laney argues a new trial is warranted because the jury trial waiver was insufficient, the Court erred in refusing to admit defense exhibits 2014 and 2015, and there was insufficient evidence to find Laney guilty of aggravated identity theft. The Government opposes the motions. Dkt. 107. For the reasons that follow the Court will deny the motions.

**MEMORANDUM DECISION AND ORDER - 1**

# BACKGROUND

### A.  Jury Trial Waiver

On September 10, 2019, the Grand Jury indicted Laney on 8 counts of health care fraud and 8 counts of aggravated identity theft. Dkt. 1. The indictment alleged that Laney used two nurse practitioners' names and National Provider Identification (NPI) numbers, without their permission, to cause bills for fraudulent urine drug tests to be submitted to Medicare and Medicaid between April and October 2015. The Indictment further alleged that Laney received commission payments as a result of his scheme.

On January 24, 2020, Laney submitted a written waiver of jury trial pursuant to Federal Rule of Criminal Procedure 23. Dkt. 35. The waiver, signed by Laney, his counsel, and the Government, states:

> I, Scott Laney, acknowledge that I was fully informed of my right to trial by jury in this cause. I hereby waive that right, request the court to try all issues of fact and law without a jury.

*Id.*

On January 27, 2020, the Government filed a motion to correct the indictment to remove "Joseph" from Laney's name in the forfeiture allegation, and correct the dates in count two and ten from June 15, 2015 to June 5, 2015. Dkt. 36. Laney did not oppose the motion and the Court granted the motion. Dkt. 38.

On June 10, 2020, the Government filed a superseding indictment. Dkt. 47.

**MEMORANDUM DECISION AND ORDER - 2**

The superseding indictment added an allegation that Laney facilitated the submission of fraudulent charges to Medicare through Pinnacle Laboratory Services using a nurse practitioner's name and NPI without her permission. *Id.* And, that Laney made payments to a coconspirator. The Superseding indictment added one count of healthcare fraud and one count of aggravated identity theft. *Id.*

At both his initial appearance on the first indictment and arraignment on the superseding indictment the magistrate judge advised Laney of his rights.

> [THE COURT:]   So at this time, Mr. Laney, I want to provide you information regarding your rights and, most specifically, your rights in connection with trial. You have the right to a trial by jury. You are presumed innocent of the charges against you and the burden of proof is on the Government to prove your guilt by competent evidence and beyond a reasonable doubt.
>
> …
>
> At the time of trial, you can testify but you also have the right to choose not to testify and if you choose to not testify, the jury will be instructed that they must not infer guilt from the fact that you do not testify. And that's because you have the absolute right to choose not to be a witness against yourself and you also have the right to remain silent. Do you understand, Mr. Laney, that you have these rights?
>
> LANEY:   Yes, Your Honor, I do.
>
> THE COURT:   And do you understand these rights?

MEMORANDUM DECISION AND ORDER - 3

> LANEY:          Yes, I do.

*Transcript*, Dkt. 93 at 2; *see also* Dkt. 92 at 2.

Laney's primary attorney, Dennis Charney, who lives in Wyoming, was not present at his initial appearance or arraignment on the superseding indictment. Instead, Randall Barnum covered these hearings for Mr. Charney. *See* Dkt. 93.

At a pretrial conference on September 11, 2020, the Court confirmed with defense counsel that Laney would proceed via bench trial. Dkt. 59, 65. Laney's pre-trial brief again confirmed that Laney had waived his right to a jury trial. Dkt. 60.

At the start of trial, the Government requested that the Court inquire with Laney if he agreed to proceed via bench trial, instead of trial by jury. Dkt. 94 at 15. The Court engaged in the following colloquy with Laney.

> THE COURT:    Mr. Laney, you understand, do you not, that you absolutely have the right -- constitutional right to a trial by jury in this case? The jury would be composed of 12 individuals. We would probably have alternates, but only 12 jurors would actually deliberate to the verdict. You would have the right to participate in selecting the jury, to review their background, to exercise challenges for cause if you felt or your attorney felt that there was some conflict of interest. You also would have the right to exercise what's called peremptory challenges. In fact, you'd have 10 peremptory challenges to the panel. The jury would be instructed that they are to be judges of the fact in the same way that I am the

**MEMORANDUM DECISION AND ORDER - 4**

|           |                                                                                                                                                                                                                                        |
|-----------|--------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------|
|           | judge of the law. |
|           | But by agreeing to waive or requesting that the jury not be involved in the case, you are, in essence, turning that all over to me and waiving your constitutional right to trial by a jury of your peers. Do you understand that? |
| LANEY:    | Yes, I do. |
| THE COURT: | Okay. And after consultation with counsel, that's your decision; correct? |
| LANEY:    | Yes, it is. |

Dkt. 94 at 15-16.

In an affidavit filed in support of his motion, Laney states that Charney advised him to waive the jury trial, because Charney believed it would be in Laney's best interests. Dkt. 88. Laney states that he did not press Charney on the potential disadvantages of waiving the jury trial; that Charney did not discuss the benefits and burdens of a jury trial with him; that Charney did not explain that the Jury's verdict had to be unanimous; and, that Charney did not advise him that he could withdraw the jury waiver after the Superseding Indictment was filed. *Id.* Laney further states that he would not have waived the jury had he known that a single juror could prevent him from being convicted. *Id.*

Charney filed a declaration supporting Laney's statements, and adding that he explained the basic difference between a bench trial and jury trial to Laney. Dkt.

**MEMORANDUM DECISION AND ORDER - 5**

89. Charney states that he believed the magistrate judge would have more fully explained the right to a jury trial at Laney's initial appearance or arraignment.

**B.     Defense Exhibits 2014 and 2015**

Prior to trial the Government filed a motion in limine seeking to limit evidence and argument regarding Millennium Health's settlement and corporate integrity agreements. Dkt. 54. The Court denied the motion, finding that evidence related to Millennium's business practices leading to the settlement agreements and corporate integrity agreements may be relevant to whether Laney knowingly and willfully executed a plan to defraud a health care benefit plan and his intent to defraud. Dkt. 73. In its order the Court stated that it would "allow Laney to present limited evidence related to Millennium's business practices leading to the settlement agreements and corporate integrity agreements related to urine drug tests." The Court indicated it would "also allow limited evidence of these agreements, subject to the Government's objection of relevance" but would not allow Laney to relitigate Millennium's conduct. *Id.*

On the second day of trial, during cross examination of Kristen Baker, defense counsel offered defense exhibits 2014 and 2015, and 2017, for admission.[1]

---

[1] Exhibit 2017 was a Millennium Health Playbook, which was eventually admitted. Dkt. 95 at 304.

**MEMORANDUM DECISION AND ORDER - 6**

Dkt. 95 at 163. Exhibit 2014 was a complaint filed by the United States against Millennium Health for healthcare fraud and Exhibit 2015 was the corporate integrity agreement Millennium entered into with the United States to settle the lawsuit. When Defense Counsel offered the exhibits the Court engaged in an extensive discussion with counsel for both parties regarding the relevance of the exhibits. *Id*. at 286-92. The Court then reserved ruling on the exhibits telling Defense Counsel that he would need to demonstrate relevance before they would be admitted. *Id.* at 291-92.

Mr. Charney discussed the Corporate Integrity Agreement (Exhibit 2015) with Ms. Baker but never offered it, or Exhibit 2014, for admission. That evening Charney filed a renewal of request to admit Exhibits 2014 and 2015 into evidence. Dkt. 81. On the morning of the third day of trial, the Court clarified that it had not refused to admit the exhibits, but instead had reserved ruling on the exhibits pending a showing of relevance. Dkt. 96 at 364-65. Defense Counsel did not seek to admit exhibits 2014 or 2015 during the rest of trial.

### C.  Evidence of Aggravated Identity Theft

Laney was charged with nine counts of aggravated identity theft. Dkt. 47 at 7-8. The Government alleged that Laney "knowingly cause[d] others to transfer, possess, or use, without lawful authority, a means of identification of another

**MEMORANDUM DECISION AND ORDER - 7**

person." *Id.* at 7. Counts 10-15 of the Superseding Indictment charged that Laney used Alisha Phillips' name and NPI number to cause urine tests to be submitted from K&K Treatment to Millennium Health. Counts 16 and 17 charged that Laney used Brenda Hoyt's name and NPI number to cause urine tests to be submitted from Dishion Enterprises to Millennium Health. Count 18 charged that Laney used Alisha Phillips' name and NPI number to cause urine tests to be submitted from K&K Treatment to Pinnacle Laboratories.

At trial the Government argued that Laney had used Ms. Phillips' and Ms. Hoyt's names and NPI numbers on various Millennium Health and Pinnacle Laboratory forms without their authorization or consent. The testimony at trial showed that Millennium and Pinnacle billed Medicare or Medicaid for the urine drug tests it performed for K&K Treatment and Dishion Enterprises.

At trial, the Government introduced copies of new client registration forms, Non-POC custom profile forms, and oral fluid custom profile forms – forms used by Millennium to register new customers. The forms for K&K Treatment appear to be signed by Alisha Phillips and contain her NPI number. *Trial Exhibits 1001, 1003, 1004*. The forms for Dishion Enterprises appear to be signed by Brenda Hoyt and contain her NPI number. *Trial Exhibits 1028, 1084, 1085*. The New Account Form used to sign up K&K Treatment with Pinnacle contains Alisha Phillips name

**MEMORANDUM DECISION AND ORDER - 8**

and NPI number but is not signed by her. *Trial Exhibit 1010.*

At trial Phillips testified that she had never met Kim Rostad, owner of K&K Treatment, nor had she ever given her authorization to use her name and NPI in relation to K&K Treatment. Dkt. 94 at 84. She testified that Laney had access to her signature, and had had her sign blank forms, but eventually she became suspicious of the requests.

Elissa Massoth, an attorney for one of the probationers providing urine samples at K&K Treatment, contacted Phillips after her client returned what was essentially a false positive test. Massoth reported that Phillips was confused and upset upon finding out that her name and NPI number had been used in association with K&K Treatment. Phillips testified that, after she was contacted by Massoth, she contacted Kim Rostad, the police, the Medicare fraud hotline, and the local courthouse. Massoth also testified that Laney had met with her after the false positive and told Massoth that Phillips had forgot that she agreed to be a medical provider. Dkt. 94 at 63-65.

Kim Rostad testified that she did not know Phillips, and she was told Phillips was the doctor who would look over forms and results. Dkt. 95 at 161. Phillips testified that she never received any results from the urine drug tests. All results were sent directly to K&K Treatment. *Trial Exhibit 1001*.

**MEMORANDUM DECISION AND ORDER - 9**

Brenda Hoyt testified that she had never agreed to be the medical provider for Dishion Enterprises and, while her signature appeared on the forms, she did not remember signing the forms. Dkt. 96 at 193-94. She testified that Laney had discussed possible referrals, but never followed up with any. Dkt. 96 at 191. Hoyt testified that she was not interested in drug testing, and had never heard of Dishion Enterprises before she was contacted by Government investigator. Wade Dishion, owner of Dishion Enterprises, testified that he did not know Brenda Hoyt outside of seeing her name on the urine drug test forms. Dkt. 96 at 226. Hoyt testified that her signatures on the Millennium forms could be hers, but she didn't sign them.

None of the handwriting on the Millennium forms matched Phillips' or Hoyt's handwriting except, possibly, their names and signatures.

## LEGAL STANDARD

Mr. Laney's motion is brought under Federal Rule of Criminal Procedure 33. Rule 33 states that "the court may vacate any judgment and grant a new trial if the interest of justice so requires." The power to grant a motion for a new trial "is much broader than its power to grant a motion for judgment of acquittal." *U.S. v. Alston*, 974 F.2d 1206, 1211 (9th Cir.1992). "If the court concludes that … a serious miscarriage of justice may have occurred, it may set aside the verdict, grant a new trial, and submit the issues for determination by another jury." *Id*. at 1211.

## ANALYSIS

A.   **Jury Trial Waiver**

Laney filed a written waiver of jury trial pursuant to Federal Rule of Criminal Procedure 23(a). The waiver stated:

> I, Scott Laney, acknowledge that I was fully informed of my right to trial by jury in this cause. I hereby waive that right, request the court to try all issues of fact and law without a jury.

Dkt. 35. At the beginning of trial, the Court advised Laney of his right to a jury trial and inquired whether he desired to waive that right. He responded that he did.

Laney now argues that his waiver was invalid because he was never advised that a jury is made of members of the community and that the jury must return a unanimous verdict. Laney states that he would not have waived his right to a jury trial if he knew that a single juror could prevent him from being convicted. Dkt. 88 at 2.

A criminal defendant has the right to a jury trial under the Sixth Amendment. The defendant may waive this right. "To be valid, a defendant's waiver of the Sixth Amendment right to a jury trial must be voluntary, knowing, and intelligent." *United States v. Laney*, 881 F.3d 1100, 1106 (9th Cir. 2018) (citing *United States v. Christensen*, 18 F.3d 822, 824 (9th Cir. 1994)). Federal Rule of Criminal Procedure 23(a) provides that "the trial must be by jury unless: (1) the defendant waives a jury trial in writing; (2) the government consents; and

**MEMORANDUM DECISION AND ORDER - 11**

(3) the court approves." "In most cases, adherence to the dictates of [Rule] 23(a) creates the presumption that the waiver was voluntary, knowing, and intelligent." *Laney*, 881 F.3d at 1106 (quoting *United States v. Bishop*, 291 F.3d 1100, 1113 (9th Cir. 2002)).

The Ninth Circuit strongly encourages, but does not require, district courts to conduct a colloquy with the defendant before accepting the jury trial waiver. *Bishop*, 291 F.3d at 1113. To determine whether the jury trial waiver is voluntary, knowing, and intelligent the district court should inform the defendant that "(1) twelve members of the community compose a jury, (2) the defendant may take part in jury selection, (3) a jury verdict must be unanimous, and (4) the court alone decides guilt or innocence if the defendant waives a jury trial." *United States v. Duarte-Higareda*, 113 F.3d 1000, 1002 (9th Cir. 1997) (citing *United States v. Cochran*, 770 F.2d 850, 851 (9th Cir.1985)). "However, the sufficiency of the colloquy is highly dependent on the education and legal sophistication of the defendant, and shorter colloquies can be sufficient to ascertain whether the waiver is knowing and voluntary." *United States v. Tamman*, 782 F.3d 543, 552 (9th Cir. 2015).

It is true that Laney filed his written waiver prior to the indictment being amended or the filing of the superseding indictment. However, the filing of the

**MEMORANDUM DECISION AND ORDER - 12**

superseding indictment did not invalidate Laney's waiver. The amendments to the original indictment were clerical in nature – correcting a date and Defendant's name – neither of which call into question the sufficiency of the waiver. The superseding indictment added one count of healthcare fraud and one count of aggravated identity theft. These changes may have marginally affected the penalties Laney was facing, but did not otherwise significantly impact the Government's case at trial. There is nothing in either of these events that call into question whether Laney's waiver was knowing, voluntary, and intelligent.

Prior to commencing trial, the Government asked that the Court advise Laney of his right to a jury trial. The Court engaged in a colloquy with Laney concerning his waiver of the right to a jury trial. The Court advised Laney that he had an "absolute right" to a trial by jury. That the jury would be composed of 12 individuals and that Laney would be able to review their background and exercise challenges for cause if he felt there was some conflict of interest. That he would have peremptory challenges. And, that by agreeing to waive the jury, he was turning the decision over to the Judge and "waiving [his] constitutional right to trial by a jury of your peers."

It is true that the Court did not specifically advise Laney that the jury's verdict must be unanimous. However, that shortcoming in the colloquy was offset

MEMORANDUM DECISION AND ORDER - 13

by Laney's written waiver which assured the Court that he had been "fully informed" by his attorney of his right to a jury trial.

Following the advisement, Laney confirmed that he understood his right to a jury trial and wished to waive it. Dkt. 94 at 16. What is not reflected in the transcript is that throughout the exchange Laney was calm and appeared confident in his decision. His mental or emotional state did not call into question the validity of the waiver. *See United States v. Christensen,* 18 F.3d 822, 826 (9th Cir. 1994).

Laney is educated, articulate, and was clearly involved in the preparation of his own defense. He was advised by competent counsel throughout the proceedings. *See Bishop*, 291 F.3d at 1114. Laney's post-trial, and post-conviction, statements do not square with his statements and demeanor prior to trial, nor his written waiver stating he had been fully advised of his right to a jury trial. Considering the entire context of the situation the Court finds that Laney knowingly, intelligently, and voluntarily, waived his right to a trial by jury.

### B.  Exhibits 2014 and 2015

Laney argues the Court erred by sustaining the Government's objections to Exhibits 2014 and 2015. Laney offered the exhibits during cross examination of Kristen Baker, and discussed Exhibit 2015 in some detail with her. The Court reserved ruling on the exhibits pending a showing of relevance. Laney did not

move to admit the exhibits during the remainder of trial. The Court did not sustain the Government's objection, nor refuse to admit the exhibits. Instead, Laney did not seek to admit them after the Court reserved ruling. Even considering the content of the exhibits, the Court finds that no serious miscarriage of justice occurred warranting a new trial.

### C. Evidence of Aggravated Identity Theft

Laney argues the Court erred in finding him guilty of aggravated identity theft. Essentially, Laney argues that if the Court found the forms were signed by Phillips and Hoyt then it was required to acquit him on these charges. Otherwise, Laney argues the Court had to speculate that Laney may have forged the forms.

The elements of aggravated identity theft are:

1. The defendant knowingly transferred, possessed, or used, without legal authority a means of identification of another person;

2. The defendant knew that the means of identification belonged to a real person; and

3. The defendant did so during and in relation to health care fraud.

Ninth Circuit Model Criminal Jury Instruction 8.83. *See also U.S. v. Gargarian*, 950 F.3d 596 (9th Cir. 2020).

Hoyt and Phillips both testified that they never authorized the use of their names or NPI numbers in association with Dishion Enterprises, or K&K Treatment, respectively. While Hoyt and Phillips testified that the signatures on the

**MEMORANDUM DECISION AND ORDER - 15**

documents could have been theirs, they did not recall signing the forms, and both stated they would not have done so. Further, both testified that the NPI numbers on the forms were not in their handwriting.

The testimony of Brenda Hoyt, Alisha Phillips, Wade Dishion, and Kim Rostad was consistent and believable. Hoyt testified that she did not know Dishion prior to the investigation. Likewise, Dishion testified he did not know Hoyt, other than seeing her name on the urine drug test forms. Phillips testified she did not know Rostad. Rostad testified she did not know Phillips. Phillips also testified that Laney asked her staff to have her sign blank forms, of which, she eventually grew suspicious.

Irrespective of whether Laney had Hoyt and Phillips sign blank forms or forged their signatures, there was significant evidence to find that he used their names and NPI numbers without authorization and legal authority.

### D.     Conclusion

The Court finds that Laney knowingly, intelligently, and voluntarily waived his right to a trial by jury. The Court further finds that there was no significant miscarriage of justice related to the evidence at trial. Therefore, the Court will deny Laney's motion.

## ORDER

**IT IS ORDERED** that Defendant's Motions for a New Trial (Dkt. 87, 101) are DENIED.

DATED: January 29, 2021

B. Lynn Winmill
U.S. District Court Judge