UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| SCOTT ALEXANDER LANEY,<br><br>Plaintiff,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br><br>Defendant. | Case No. 1:23-cv-000383-BLW<br><br>**MEMORANDUM DECISION AND ORDER** |

# INTRODUCTION

Pending before the Court is Scott Alexander Laney's Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255 (Dkt. 1). Laney argues that he is entitled to relief because he received ineffective assistance of counsel at trial and because he was convicted of conduct that is not criminal as a matter of law. Having reviewed the record, including the record in the underlying criminal case, the Court concludes that the existing materials are conclusive, and an evidentiary hearing is unnecessary. For the reasons described below, the Court will deny the Motion.

# BACKGROUND

Laney was indicted in September 2019 on eight counts of health care fraud

in violation of 18 U.S.C. § 1347 and eight counts of aggravated identity theft in violation of 18 U.S.C. § 1028A. Dkt. 1, *United States v. Laney*, No. 1:19-cr-00292-BLW. The indictment accused Laney of fraudulently billing Medicare and Medicaid for urinalysis drug screening from 2015 to 2016, when he worked as a regional sales representative for the laboratory company Millennium Health. The scheme involved ordering urine tests using the National Provider Identifier (NPI) numbers of medical professionals who had neither ordered the tests nor seen the patients. Laney then submitted the testing charges to Medicare and Medicaid for reimbursement, which resulted in commission payments from Millenium.

Laney retained Dennis Charney to represent him. Because Mr. Charney lived out of state, a local attorney, Randal Barnum, provided substitute representation at several routine hearings, including Laney's arraignment. There, the magistrate judge informed Laney that he had the right to a jury trial but did not further explain what that right entailed.

Mr. Charney subsequently advised Laney that he should waive his right to a trial by jury and instead opt for a bench trial. Mr. Charney believed that because the issues were legally complex but the facts mostly undisputed, a bench trial would be the most strategic option. At the time, he explained to Laney "the *basic* difference between a bench trial and a jury trial" – i.e., that the judge would be the finder of fact. *Ex. B, Dec. of Dennis Charney* ¶ 7, Dkt. 1. He did not, however, tell

MEMORANDUM DECISION AND ORDER - 2

Laney that a jury verdict would need to be anonymous, that the jury would be chosen from Laney's community, or that Laney could participate in the selection of jurors. *Ex. C., Supp. Dec. of Scott Laney* ¶ 15-17, Dkt. 1. Mr. Charney mistakenly believed that the magistrate judge had provided this information at the arraignment. Laney said that he would Google the difference between a bench trial and jury trial, but he never did. *Id.* ¶¶ 12-13. In January 2020, Laney waived his right to a jury trial. Dkt. 35, *United States v. Laney*, No. 1:19-cr-00292-BLW.

In June 2020, the United States obtained a Superseding Indictment that added one count each of health care fraud and aggravated identity theft. Dkt. 47, *United States v. Laney*, No. 1:19-cr-00292-BLW. The new charges related to similar fraudulent billing using the company Pinnacle Laboratory Services rather than Millenium. At the second arraignment, substitute counsel again represented Laney so that Mr. Charney would not have to travel. Counsel did not revisit the jury trial issue, and Laney apparently did not know that he could withdraw his waiver. *Ex. B, Dec. of Dennis Charney* ¶ 9, Dkt. 1.

This Court held a six-day bench trial in September 2020. On the first day of the trial, the Court reminded Laney of his right to a jury trial in the following colloquy:

> THE COURT: Mr. Laney, you understand, do you not, that you absolutely have the right--constitutional right to a trial by jury in this case? The jury would be composed of 12 individuals. We would probably have alternates, but only 12 jurors would actually deliberate

MEMORANDUM DECISION AND ORDER - 3

> to the verdict.
>
> You would have the right to participate in selecting the jury, to review their background, to exercise challenges for cause if you felt or your attorney felt that there was some conflict of interest.
>
> You also would have the right to exercise what's called peremptory challenges. In fact, you'd have 10 peremptory challenges to the panel. The jury would be instructed that they are to be judges of the fact in the same way that I am the judge of the law.
>
> But by agreeing to waive or requesting that the jury not be involved in the case, you are, in essence, turning that all over to me and waiving your constitutional right to trial by a jury of your peers.
>
> Do you understand that?
>
> THE DEFENDANT: Yes, I do.
>
> THE COURT: Okay. And after consultation with counsel, that's your decision; correct?
>
> THE DEFENDANT: Yes, it is.

*Tr., Vol. 1* at 15-16. The Court did not specify that a jury conviction would need to be unanimous.

Laney was convicted on all eighteen counts and sentenced to a total of forty-two months in prison – eighteen months for the health care fraud and twenty-four months for aggravated identity theft. He immediate moved for a new trial, arguing that his waiver of a jury trial was invalid because he had not been informed that a jury verdict would need to be unanimous or that jurors would be chosen from his community. The Court denied the motion based on the written waiver itself, the

MEMORANDUM DECISION AND ORDER - 4

Court's colloquy at the beginning of the trial, and Laney's confidence when asked to confirm that he wished to waive a jury trial. Dkt. 119, *United States v. Laney*, No. 1:19-cr-00292-BLW.

Laney appealed. The Ninth Circuit Court of Appeals affirmed the denial of a new trial and concluded that his waiver of a jury trial was knowing, intelligent, and voluntary. Laney also argued that he improperly received a sentencing enhancement for obstruction of justice. The appellate court agreed in that regard and ordered resentencing. In August 2022, Laney was resentenced to same prison term of forty-two months.

Laney now brings this Motion to Set Aside, Vacate, or Correct Sentence under 28 U.S.C. § 2255. He argues that (1) Mr. Charney's failure to inform him of the material benefits of a jury trial constitutes ineffective assistance of counsel; and (2) he is factually innocent of aggravated identity theft based on the Supreme Court's recent decision in *Dubin v. United States*, 143 S. Ct. 1557 (2023), which limited the reach of the underlying criminal statute.

## LEGAL STANDARD

A federal prisoner may challenge his sentence on the grounds that it "was imposed in violation of the Constitution or laws of the United States." 28 U.S.C. § 2255(a). When bringing this motion, the prisoner "must make specific factual allegations which, if true, would entitle him to relief on his claim." *United States v.*

**MEMORANDUM DECISION AND ORDER - 5**

*Keller*, 902 F.2d 1391, 1395 (9th Cir.1990). If he meets this burden, the district court must grant an evidentiary hearing "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." *Id.* § 2255(b); *see Baumann v. United States*, 692 F.2d 565, 571 (9th Cir. 1982) ("[A] hearing is mandatory whenever the record does not affirmatively manifest the factual or legal invalidity of the petitioner's claims."). Conclusory statements, without more, are insufficient to require a hearing. *United States v. Johnson*, 988 F.2d 941, 945 (9th Cir. 1993).

## ANALYSIS

1. **Ineffective Assistance of Counsel**

The Sixth Amendment guarantees criminal defendants the right to the effective assistance of counsel. To succeed on an ineffective assistance claim, a person must show that (1) the representation fell short of an objective standard of reasonableness; and (2) prejudice resulted from counsel's performance. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). As explained below, Laney cannot show than his counsel was incompetent, nor that prejudice resulted.

He can, however, procedurally bring the ineffective assistance claim. The Government suggests that the claim is barred because Laney already litigated the issue on direct appeal. *See United States v. Hayes*, 231 F.3d 1132, 1139 (9th Cir. 2000) ("When a defendant has raised a claim and has been given a full and fair

opportunity to litigate it on direct appeal, that claim may not be used as basis for a subsequent § 2255 petition."). But the issue on appeal was whether his waiver of the right to a jury trial was knowing, voluntary, and intelligent – a due process question. The issue presented now is whether counsel acted competently in advising him about his right to a jury. These questions are factually related but legally distinct. Therefore, the Court will take up the substance of Laney's claim.

### A. Objective Competence

When evaluating the alleged incompetence of counsel, courts must apply "a heavy measure of deference to counsel's judgments." *Strickland*, 466 U.S. at 691. "It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable." *Id.* at 689. The burden is thus on the defendant to overcome the presumption that counsel's performance fell outside "the wide range of reasonable professional assistance." *Id.*

Laney does not expressly challenge Mr. Charney's recommendation that he opt for a bench trial – clearly a reasonable strategic choice, albeit, he claims, "a bad call." *Pl.'s Mem.* at 9, Dkt. 1. Rather, he argues that counsel failed in the basic obligation to inform him of the scope and benefits of his right to a jury trial.

An attorney's failure to advise a defendant about the fundamental right to a

**MEMORANDUM DECISION AND ORDER - 7**

jury trial can constitute ineffective assistance. For example, it is not acceptable for counsel to proceed to a bench trial without ensuring that the defendant has signed a waiver giving up the right to a jury trial. *See Vickers v. Superintendent Graterford SCI*, 858 F.3d 841, 850-51 (3rd Cir. 2017); *McGurk v. Stenberg*, 163 F.3d 470, 472-73 (8th Cir. 1998). Even if the defendant completes a waiver, counsel's performance can be deficient if the reasons for recommending a bench trial were completely ridiculous or illogical. *Torres v. Small*, No. CV 00-10388 RGK, 2008 WL 1817243, at *19-21 (C.D. Cal. Apr. 21, 2008).

But claims of ineffective assistance must clear a high bar. Here, counsel's recommendation to proceed with a bench trial was reasonable given the nature of the allegations. Laney was not pressured to do this against his will, and he admits that he signed a written waiver advising him that he had the right to a trial by jury. In the waiver, Laney also indicated that he "was fully informed" of that right. Dkt. 35, *United States v. Laney*, No. 1:19-cr-00292-BLW. The Court does not dispute that counsel failed to actually explain the scope of Laney's jury rights, and such an omission was unideal. It does not, however, rise to the level of a constitutional violation.

In reviewing counsel's performance, it is important to remember that Laney was a sophisticated defendant with a college education and the ability to retain private counsel. When reviewing the sufficiency of a colloquy on the right to a jury

trial, courts heavily weigh "the education and legal sophistication of the defendant." *United States v. Tamman*, 782 F.3d 543, 552 (9th Cir. 2015). Though Laney no longer directly challenges the sufficiency of the colloquy, a similar logic applies to an assessment of counsel's competence regarding the waiver. Under the circumstances, it was not unreasonable for counsel to think that Laney already knew the particulars of his right to a jury trial. And if Laney did not have this knowledge, he had numerous opportunities to ask questions, both before signing the waiver and at the commencement of the bench trial.

Again, counsel's failure to provide the information was a mistake, and in an ideal world, Laney would have been informed of every detail of this right. But the Sixth Amendment demands adequacy, not perfection. The Court thus determines that Laney's trial counsel performed competently.

### B. Prejudice

Even if Laney could establish deficient performance based on the jury trial issue, he cannot show that the error created prejudice.

Counsel's incompetent performance only violates the Sixth Amendment when prejudice results from the conduct. *Strickland*, 466 U.S. at 691. Under many circumstances, this requires the defendant to prove that the outcome would likely have been different had he received proper representation. In this context, however, the appropriate test is not entirely clear. The Government contends that

Laney must establish that a jury trial would have resulted in a lesser judgment. Laney argues that he only needs to show that he would have chosen a jury trial had he been properly advised.

The Ninth Circuit Court of Appeals has stated that a defendant asserting prejudice based on a decision to waive a jury trial must show "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Hensley v. Crist*, 67 F.3d 181, 185 (9th Cir. 1995). This would seem to require Laney to establish a likelihood of acquittal had he gone to trial. But several Supreme Court cases since *Hensley* have arguably clarified that an assessment of prejudice in this context – where a defendant elects to forgo a proceeding entirely – should focus on process rather than outcome. *See Vickers*, 858 F. 3d at 855-57 (discussing this history). Most recently, in *Lafler v. Cooper*, the Court held that a defendant asserting prejudice based on a rejected plea deal must only show that "the outcome of the plea process would have been different with competent advice." *Lafler v. Cooper*, 566 U.S. 156, 163 (2012). At least one circuit court has concluded that *Lafler* requires a similar test in the context of jury trial waivers: "whether the defendant can demonstrate a reasonable probability that, but for counsel's ineffectiveness, he would have opted to exercise that right." *Vickers*, 858 F.3d at 857.

This Court need not determine the proper test for prejudice because Laney

MEMORANDUM DECISION AND ORDER - 10

fails under either standard. Laney says that he would have opted for a jury trial had he known that the verdict would need to be unanimous and that jurors would be chosen from the community. But this position is contrary to all the evidence from the trial record and unsupported by anything except Laney's retrospective assertions. Alone, his affidavit is not enough to establish prejudice even on the most liberal standard.

Though Laney suggests that he knew nothing at all about juries when he decided to waive his rights to a jury trial, the Court provided several relevant pieces of information at the start of the bench trial. In addition to reminding Laney that he had an absolute right to a trial by jury, the Court explained in detail that Laney would be able to review jurors' backgrounds and exercise peremptory challenges. This information did not change Laney's calculations in the slightest. He remained calm, articulate, and confident in his choice to waive the right. *See* Dkt. 121 at 14, *United States v. Laney*, No. 1:19-cr-00292-BLW. His lack of hesitation when presented with this apparently revelatory information belies his insistence that he was misled into a jury trial by counsel's other omissions.

In the absence of anything except Laney's word – "in the harsh light of hindsight," *Bell v. Cone*, 535 U.S. 685, 702 (2002) – that he would have proceeded differently, the Court concludes that Laney was not prejudiced by counsel's failure to advise him about the scope of his right to a jury trial.

**MEMORANDUM DECISION AND ORDER - 11**

For these reasons, the record conclusively shows that Laney is not entitled to relief on his ineffective assistance of counsel claim.

## 2. Factual Innocence

Laney also claims that he is factually innocent of aggravated identity theft because Supreme Court in *Dubin v. United States*, 143 S. Ct. 1557 (2023), narrowed the scope the criminal statute under which he was convicted. He contends that, in light of *Dubin*, the evidence to support the verdict is insufficient as a matter of law, and the conviction therefore violates his Fifth Amendment due process rights. This argument is incorrect.

An individual commits aggravated identity theft under 18 U.S.C. § 1028A when he, "during and in relation to [an enumerated felony], knowingly transfers, possesses, or uses, without lawful authority, a means of identification of another person." Enumerated felonies include health care fraud, of which Laney was also convicted. *See* 18 U.S.C. § 1028(A)(c).

In *Dubin*, the Supreme Court held that aggravated identity theft occurs only "when the defendant's misuse of another person's means of identification is at the crux of what makes the underlying offense criminal, rather than merely an ancillary feature of a billing method." 143 U.S. at 1563. There, the defendant overbilled Medicaid by inflating the credentials of an employee who performed psychological testing. *Id.* The overstated credentials resulted in a higher rate of

reimbursement, but the tests themselves were valid and had been performed by the employee named in the claim. *Id.* The Court concluded that treating such conduct as identity theft would broaden the statute beyond reasonable bounds, "covering any time another person's means of identification is employed in a way that facilitates the crime." *Id.* at 1567. Rather, the Court explained, the statute applies "when the means of identification specifically is a key mover in the criminality. This central role played by the means of identification, which serves to designate a specific person's identity, explains why we say that the 'identity' itself has been stolen." *Id.* at 1568.

      Laney's appropriation of the identities of medical personnel was at the crux of the criminality of his conduct. Laney misused nurses' names and NPI numbers to falsely represent that the urine tests were ordered for medical treatment. This is not a case of overbilling otherwise real services. Unlike in *Dubin*, the tests were neither medically indicated nor ordered by the provider identified on the claim. The medical providers' identities were not incidentally involved in the scheme but at the heart of what made it possible. It does not matter that "the people being tested and the testing were real," as Laney tries to argue, because the nurses' role in that testing was false. *See Pl.'s Mot.* at 12, Dkt 1. In other words, in contrast to *Dubin*, he misrepresented the *who* behind the services, not "*how* and *when* services were provided to a patient." *Dubin*, 143 S. Ct. 1574.

It is not clear exactly what would qualify as aggravated identity theft under Laney's reading of the statute. He suggests that he did not commit identity theft because he "did not hold himself out as the providers," *see Pl.'s Mot.* at 12, Dkt 1, but such a requirement is completely untethered from both the statute and the opinion in *Dubin*. He also appears to argue that because use of the providers' identities was only a means to the end of Medicare and Medicaid fraud, it does not qualify as a separate crime. *Id.* But the express purpose of the statute is to criminalize identity theft performed "during and in relation to" another felony. 18 U.S.C. § 1028A(a)(1). Identity theft under the law will always be a means to the other felony. *Dubin* did not change that. It simply excluded from the statute overbilling cases that misrepresent *how* or *when* rather than *who*.

In sum, *Dubin* has no effect on Laney's aggravated identity theft convictions, and he was properly convicted of those crimes. The record also conclusively establishes that he does not have a viable claim for ineffective assistance of counsel. As such, Laney's Motion to Vacate, Set Aside, or Correct Sentence is denied without a hearing.

## ORDER

**IT IS ORDERED that:**

1. Plaintiff's Motion to Vacate, Set Aside, or Correct Sentence (Dkt. 1) is **DENIED**.

DATED: November 1, 2024

B. Lynn Winmill
U.S. District Court Judge